

**FILED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

DEC 2 3 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | ) |
| A black/silver Apple iPhone, Model A1634, FCC ID: | ) |
| BCG-E2944A, IMEI: 353325072252905 AND a | ) |
| black/green Apple iPhone, IMEI: 353906103822871, | ) |
| CURRENTLY LOCATED AT DEA Sacramento, | ) |
| 4328 Watt Avenue, Sacramento, California | ) |

Case No. 2:19 - SW 1 1 6 9 - ▓▓▓ DB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute cocaine |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Jason Chin, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **12-23-19**

_____
*Judge's signature*

City and state: Sacramento, California

Deborah Barnes, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41**
**FOR WARRANTS TO SEARCH DEVICES**

I, Jason Chin, being first duly sworn, hereby depose and state as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been so employed since May 2005.  I am currently assigned to the DEA Sacramento District Office and am charged with investigating drug trafficking and money laundering activities in the Eastern District of California, and elsewhere.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests for federal felony offenses.  Additionally, I am a Federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

3.      I was trained as a DEA Special Agent at the DEA Academy, Quantico, Virginia.  During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively.  I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, MDMA, and other dangerous drugs prohibited by law.  I received further training in search and seizure law, financial investigations and money laundering techniques, and many other facets of drug law enforcement.

4.      During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations.  I have participated in executing numerous Federal and State search warrants involving the aforementioned listed controlled substances, the seizure of narcotics-related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, various types of infiltration, including undercover agents, informants, and cooperating sources.  Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I am familiar with the methods used by drug traffickers to smuggle and safeguard controlled substances, to distribute, manufacture, and transport controlled substances, and to collect, conceal and launder drug related proceeds, and to communicate through the use of cellular telephones and electronic devices with other participants to accomplish such objectives.

5.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested search warrants and does not set forth all of my knowledge about this matter.  Rather, this affidavit is submitted in support of the Government's request that search warrants be issued relating to violations of Title 21, United States Code § 841(a)(l), Possession with Intent to Distribute Cocaine, to obtain numeric identifiers such as serial numbers or other identifying numbers, names, nicknames, telephone numbers, fax numbers, email addresses, social media accounts, dates and times of call activity, passwords, photographs, text messages, and other numbers associated with individual names from the devices described below.

## II.    **IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6.      The property to be searched, described below and in Attachments A-1 and A-2, includes the following telephones and electronic devices (collectively referred to as the "DEVICES").

a)  Black/silver Apple iPhone, Model A1634, FCC ID: BCG-E2944A, IMEI: 353325072252905 (hereafter "DEVICE #1"); and

b)  Black/green Apple iPhone, IMEI: 353906103822871 (hereafter "DEVICE #2")

7.      The DEVICES are currently located at the DEA Sacramento, 4328 Watt Avenue, Sacramento, California.

8.      The applied-for warrant would authorize the forensic examination of the DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

### III.     OVERVIEW

9.      During this investigation, law enforcement officers stopped John Phillip HOLLIS II (hereafter "HOLLIS") in his vehicle, where over a kilogram of cocaine was found.

10.     Under 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

### IV.     PROBABLE CAUSE

11.     On December 19, 2019, at about 6:30 a.m., law enforcement served federal search and arrest warrants at 902 33rd Street in Sacramento.  Agents arrested three residents of the house on federal drug charges.  During the search warrant, investigators seized a yellow iPhone that was located in the living room of the residence.  Later, a search was conducted of the iPhone, and investigators observed a messaging application known as Signal installed on the phone. Investigators accessed the Signal application and observed that a text message had been received on December 19, 2019 at 3:23 p.m. from telephone number 916-947-9621, a phone number identified in this investigation as a phone used by HOLLIS.  The message from HOLLIS stated "I got a sample to show you whenever you are free."

12.     At approximately 6:02 p.m., law enforcement directed a message to HOLLIS at telephone number 916-947-9621 via the Signal application on the yellow iPhone.  The message was as follows: "What up (extended thumb and pinky finger emoji), Been hella occupied with

fam visiting (palm tree emoji)." HOLLIS immediately replied and wrote "All good that's what I figured I have a sample if you want to check it out." In response, law enforcement directed a message back to HOLLIS that stated "With fam at the moment (palm tree emoji) Just bring 1 like usual and I'll be free sometime after 8 (palm tree emoji)." HOLLIS then replied "Ok cool let me know."

13.     At approximately 7:39 p.m., law enforcement established surveillance at 902 33rd Street and in the surrounding vicinity of the residence. Investigators also parked a marked police car in front of the residence, with its lights activated. Agents texted HOLLIS at 8:21 p.m.: "Cops outside let's do this in an hour (palm tree emoji). HOLLIS responded: "I see that" and "OK cool or hit me when he leaves." Surveillance observed a vehicle momentarily paused on the street just south of 902 33rd Street before continuing southbound on 33rd Street and departing from the area. During the time HOLLIS's vehicle paused on 33rd Street, no occupants exited the vehicle. Surveillance followed HOLLIS's vehicle onto eastbound Business 80.

14.     At approximately 8:30 p.m., a California Highway Patrol ("CHP") marked unit, at the direction of your affiant, initiated a stop of HOLLIS's vehicle on the entrance ramp of westbound Business 80 at El Camino Avenue.

15.     During the stop, CHP Officer Phillip Williams, asked HOLLIS if he had any weapons or drugs in the vehicle. HOLLIS told Officer Williams that drugs were in the vehicle but declined to say what type of drugs or where the drugs were located in the vehicle. CHP K-9 handler Officer Greg Barker responded to the scene and ran a narcotic detection dog around HOLLIS's vehicle. The narcotic detection dog—which is trained to alert to cocaine and other controlled substances—positively alerted to the presence of narcotics around the trunk and gear shift area of the vehicle. CHP officers searched the vehicle and discovered a computer briefcase in the trunk. Upon opening the computer briefcase, officers discovered a plastic Tupperware style container with approximately one kilogram of suspected cocaine inside. The kilogram of suspected cocaine was in the shape of a rectangular brick and was wrapped in cellophane. Officers also discovered a gallon size Ziploc bag with approximately one-half pound of suspected cocaine. I

am familiar with cocaine, its appearance, and the methods that drug transporters use to package it. Based on that knowledge and my observation of the substances found in the car, I believe that the packages contain cocaine. HOLLIS was arrested by the CHP Officers and transported to a CHP station where HOLLIS was taken into custody by DEA.

16.     CHP Officers also seized DEVICE #1 and DEVICE #2 from HOLLIS at the time of his arrest on December 20, 2019. On the same date, custody of DEVICE #1 and DEVICE #2 was transferred to DEA.

17.     Based on my training and experience as a DEA Special Agent, and upon the shared experience of other agents and officers with whom I have worked, I am aware that it is common practice for individuals involved in narcotics trafficking to rely on the use of telephones, and particularly, cellular telephones, to operate the distribution of illegal drugs efficiently. I also know that it is common for those involved in drug trafficking to communicate by telephone with other suppliers and distributors of illegal drugs. I know it is common for those involved in illicit drug distribution to have multiple phones to evade the detection of law enforcement and to facilitate the operation further.

18.     Based on my training and experience, I also know that drug traffickers use mobile telephones to communicate with one another to facilitate their drug trafficking, either by voice or text message. Mobile telephones preserve in their memory, a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information. Information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics traffickers, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the

5

telephone number of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Narcotics traffickers sometimes leave voice messages for each other which can be evidence of both their mutual association and their joint criminal activity. Mobile telephones also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of a crime. Mobile telephone companies also store the data described in this paragraph on their own services and associate the data with particular users' mobile telephones.

19. Because the DEVICES described herein were in the possession of HOLLIS who was engaged in illegal narcotics distribution, on at least December 20, 2019, and that there is further evidence that HOLLIS used cellular telephones and other electronic devices to conduct or facilitate the narcotics distribution, there is probable cause to believe that the aforementioned DEVICES were used to facilitate specific narcotics transactions, and that information and records relating to these activities will be found stored in (or on) the Devices.

20. Specifically, based on the facts set forth above, as well as my training and experience, there is probable cause to believe that the DEVICES located during the above-mentioned arrest, and subsequently seized by the DEA, identified herein and set forth in greater detail in Attachments A-1 and A-2 to this Affidavit, contain evidence and instrumentalities of cocaine distribution in the form of pictures, text messages, and other such data that constitutes evidence of the same illicit activity, and the DEVICES themselves are property designed for use, "intended for use, and have been used in advancing the distribution of cocaine in violation of Title 21 U.S.C. § 841(a)(l).

21. The DEVICES are currently in the lawful possession of the DEA. As explained above, the DEVICES came into the DEA's possession incident to the arrest of HOLLIS. Therefore, while the DEA might already have all necessary authority to examine the DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

22.     The Device is currently in storage at DEA Sacramento, 4328 Watt Avenue, Sacramento, California.  In my training and experience, I know that the DEVICES have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICES first came into the possession of the DEA.

## V.     TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a) Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing

the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c) Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d) GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e) PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for

8

entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.  Based on my training, experience, and research, I know that the DEVICES have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA and to access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## VI.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICES because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f) I know that when an individual uses an electronic device to, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic

device was used; data that was sent or received; and other records that indicate the nature of the offense.

27. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the DEVICES to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution*. Because this warrant seeks only permission to examine the DEVICES already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## VII.   CONCLUSION

29.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICES described in Attachments A-1 and A-2 to seek the items described in Attachment B.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.


_____
Jason Chin
Special Agent
Drug Enforcement Administration

Sworn and Subscribed to me on December 23 2019


_____
The Honorable Deborah Barnes
United States Magistrate Judge


Approved as to form:


_____
Paul Hemesath
Assistant U.S. Attorney

## ATTACHMENT A-1

The property to be searched is a black/silver Apple iPhone, Model A1634, FCC ID: BCG-E2944A, IMEI: 353325072252905, referred to as "DEVICE #1."  DEVICE #1 is currently located at DEA Sacramento, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of DEVICE #1 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-2

The property to be searched is a black/green Apple iPhone, IMEI: 353906103822871, referred to as "DEVICE #2."  DEVICE #2 is currently located at DEA Sacramento, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of DEVICE #2 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 21, United States Code,§ 841 (Distribute and to Possess with Intent to Distribute a Controlled Substance) and involve John Phillip HOLLIS II, including:

a.   Communications evidencing any of the foregoing violations, whether in draft or complete form, drafted or sent in any communications medium such as a communications application ( e.g., WhatsApp, SnapChat), text message, e-mail, and in any form (e.g., text message, picture, emoji, video or audio file) and whether with a supplier, customer, or other participant in the conduct underlying the foregoing violations, lists of customers and related identifying information;

b.   Documents evidencing acquisition, distribution, sale, storage, or disposal of any drug or controlled substance and any material to be mixed with a controlled substance;

c.   Documents evidencing any use or movement of proceeds from the distributing of controlled substances;

d.   Documents evidencing customers, potential customers, former customers, all for controlled substances, and related identifying information;

e.   Documents evidencing types, amounts, and prices of controlled substances trafficked as well as dates, places, and amounts of specific transactions, and as well as the ingredients in each of the drugs or controlled substances;

      f.   All bank records, checks, credit card bills, account information, and other financial records;

      g.   Account usernames or identifiers related to e-mail services, communications applications services, or cloud-based storage services;

      h.   Any documents recording computer, tablet, or wireless phone use Metadata concerning any of the foregoing;

      i.   lists of customers and related identifying information;

      j.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; and

      k.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

2.     All names, words, telephone numbers, e-mail addresses, communications applications registered usernames, passwords, time/date information, messages or other electronic data in the memory of the Device or on any server associated with the Device.

3.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "Documents" and "Information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created, used, or stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data), any photographic or text-based form, and in whatever folder, file,

application (including wireless telephone "apps"), program or other structure they are located in.

AO 93  (Rev. 11/13) Search and Seizure Warrant

## UNITED STATES DISTRICT COURT

**ORIGINAL FILED**

for the

Eastern District of California

DEC 2 3 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of ) | |
| A black/silver Apple iPhone, Model A1634, FCC ID: ) | Case No. |
| BCG-E2944A, IMEI: 353325072252905 AND a ) | |
| black/green Apple iPhone, IMEI: 353906103822871, ) | 2:19-SW-1169 ———— DB —— |
| CURRENTLY LOCATED AT DEA Sacramento, ) | |
| 4328 Watt Avenue, Sacramento, California ) | |

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____January 6, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____December 23, 2019_____
@ 12:30 pm

_____
Judge's signature

City and state:   _____Sacramento, California_____

_____Deborah Barnes, U.S. Magistrate Judge_____
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____                                    _____
Signature of Judge                                                              Date

## ATTACHMENT A-1

The property to be searched is a black/silver Apple iPhone, Model A1634, FCC ID: BCG-E2944A, IMEI: 353325072252905, referred to as "DEVICE #1."  DEVICE #1 is currently located at DEA Sacramento, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of DEVICE #1 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-2

The property to be searched is a black/green Apple iPhone, IMEI: 353906103822871, referred to as "DEVICE #2."  DEVICE #2 is currently located at DEA Sacramento, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of DEVICE #2 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 21, United States Code,§ 841 (Distribute and to Possess with Intent to Distribute a Controlled Substance) and involve John Phillip HOLLIS II, including:

a.  Communications evidencing any of the foregoing violations, whether in draft or complete form, drafted or sent in any communications medium such as a communications application ( e.g., WhatsApp, SnapChat), text message, e-mail, and in any form (e.g., text message, picture, emoji, video or audio file) and whether with a supplier, customer, or other participant in the conduct underlying the foregoing violations, lists of customers and related identifying information;

b.  Documents evidencing acquisition, distribution, sale, storage, or disposal of any drug or controlled substance and any material to be mixed with a controlled substance;

c.  Documents evidencing any use or movement of proceeds from the distributing of controlled substances;

d.  Documents evidencing customers, potential customers, former customers, all for controlled substances, and related identifying information;

e.  Documents evidencing types, amounts, and prices of controlled substances trafficked as well as dates, places, and amounts of specific transactions, and as well as the ingredients in each of the drugs or controlled substances;

f.   All bank records, checks, credit card bills, account information, and other
financial records;

g.   Account usernames or identifiers related to e-mail services, communications
applications services, or cloud-based storage services;

h.   Any documents recording computer, tablet, or wireless phone use Metadata
concerning any of the foregoing;

i.   lists of customers and related identifying information;

j.   types, amounts, and prices of drugs trafficked as well as dates, places, and
amounts of specific transactions; and

k.   any information related to sources of drugs (including names, addresses, phone
numbers, or any other identifying information).

2.   All names, words, telephone numbers, e-mail addresses, communications applications
registered usernames, passwords, time/date information, messages or other electronic data in the
memory of the Device or on any server associated with the Device.

3.   Evidence of user attribution showing who used or owned the Device at the time the
things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved
usernames and passwords, documents, and browsing history;

As used above, the terms "Documents" and "Information" include all of the foregoing
items of evidence in whatever form and by whatever means they may have been created, used, or
stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data), any photographic or text-based form, and in whatever folder, file,

application (including wireless telephone "apps"), program or other structure they are located in.